Argument not to exceed 15 minutes per side. Mr. Eman for the appellant. May it please the Court. Frank Eman appearing for the appellant, Jerry Bales. Always a pleasure to the defendant. An older man was accused of improper criminal sexual conduct with a young niece and I start out with that fact because that fact colors every issue in this case. This is not a breaking and entering charge, this is not a larceny charge, this is an emotionally charged criminal sexual conduct charge. And when you're talking about prosecutorial misconduct or you're talking about withholding a police report, what you're talking about... I was really curious about the state trial court judge. Was the state trial court judge of the attitude, well these are aggressive lawyers, I'm going to let them have at it? I mean I must say I was just trying to figure out the disposition of this trial judge in terms of particularly the prosecutorial misconduct allegations. I mean it seems like everyone was giving as good as they were getting. That doesn't necessarily mean you lose, but I just... Do you have an opinion? Okay, so what was going on? It makes me want to restrain myself to try to defend myself. I'm not going to try to do that today, the record is the record. I don't know what was going on, I've never experienced anything like this in 43 years of practice. It was a crescendo of attacks on me and the defendant beginning in the first day of trial. This is only a three-day trial. I've had three-month trials where the prosecutor not even once acted in a manner where the prosecutor here 15, 20 times went beyond the bounds of fair prosecutorial conduct. The judge's attitude was what the attorneys say is not evidence, so I'm not going to take any action, I'm not going to intervene, I'm not going to do anything. Early on in the case, I moved that the prosecutor be admonished when she called me unethical in front of the jury. The court denied that. What the lawyers say is not evidence, thank you. Later, I approached the bench, excuse me, early on I asked for an admonishment before I was called unethical and asked again that the prosecutor be admonished for her conduct. Again, the court denied it. Then I moved for a mistrial at the conclusion of the prosecutor's case, called the fact that I had had called her out for attacking me in the manner that she did, and the prosecutor denied that. Then in closing, when the prosecutor's crescendo of misconduct reached its height, I again moved for a motion for mistrial based on some of the things said. I think she called me a liar three times in her closing argument, if I remember correctly. The problem with that is when you feel attacked yourself in the courtroom, you can lose focus and you feel like you need to defend yourself instead of your client, and I was struggling with that through the whole trial, I will admit that. I will say this though, several courts have said that this conduct was invited or that it was a contentious trial. I think if you review this whole record, you won't see in there at any time that I ever personally address the prosecutor, let alone personally attack the prosecutor. There was one time when I expressed frustration with cross-examining the similar act's witness and said something like, I'm sorry, Your Honor, I get frustrated when witnesses aren't telling the truth. That was an improper comment. It was not directed to the prosecutor. It did not invite prosecutorial response, and I never invited the prosecutor's objections that I was misstating the record, when in fact I was not misstating the record. I was stating the record correctly, as I point out in my brief, every time she stood up and said, oh he's misstating the record, oh he's lying to the jury, I was not. I was stating the evidence. What did the Michigan appellate courts say about that prosecutorial misconduct? What they said about that is it didn't so infect the trial that it resulted in the lack of a fair trial. I think the standard they actually applied was that it was not outcome determinative, is the standard. Now that's not exactly the standard under the Adonale D. Cristoforo or Darden v. Wainwright, the main U.S. Supreme Court cases, or the Young case, which I recently cited to the court in a 28J letter, which deals with the personal attacks on Defense Counsel. And that's at page 4 of their opinion, which is R-411, page ID 917, when they said it wasn't outcome determinative. That's the same thing as a harmless error? Kind of, yes. I think so. But I think the Court of Appeals got mixed up. Not outcome determinative is often applied in ineffective assistance of counsel cases, although Strickland doesn't specifically say not outcome determinative, that is often interpreted that way. So I don't know why they applied that standard, but that's not the proper standard. It's the question whether there was a denial of a I don't know how you could have this much misconduct in attacks, both on the defendant and defense counsel, personal of nature and all improper, and not be not be prosecutorial misconduct. One of the responses to that is that at the objection time frames, the judge instructed the jury. Do you think that that alters whether there was a fundamental unfairness when the judge says to the jury, they're bickering out here, but you ignore that because that's not testimony? Well, had she said that, perhaps that would have had some effect, but she never said anything like that at all, number one. Number two, I think again if you look at the record, you will see this was not a question of bickering. So it's a question of the prosecutor continuing to launch attacks on the defendant personally and defense counsel personally. Do you think that the instruction to the jury, let's say there was not an explanation, anything other than the jury, a direct statement to the jury, this is not evidence, this is not testimony, does that alter your analysis under fundamental fairness? No, it does not, and let me explain why. Let me just point to one comment of the prosecutor that she made during closing argument. There was an objection. The instructions are relevant, right? I mean your case would be stronger had there been no instruction. But the only instruction was what the lawyers say is not evidence. Yeah, yeah, right, but that's like the whole point. So, I mean, you have to concede it's relevant. I mean, wouldn't your case be stronger had that instruction not been given? In other words, had you not even instructed the jury not to pay attention to that, what they're saying is not evidence, and had that not even been given, wouldn't your hand be stronger in this case? It would be stronger, but... Okay, so I'm just saying that proves it's relevant. She did something. I'll say she did something. Which is relevant to the extent of the damage, the risk of harm, and the risk of unfairness. But I don't think that instruction, what the lawyers say is not evidence, is ever appropriate to deal with pervasive and serious prosecutorial misconduct. I think when a lawyer stands up and says, your honor, what he's doing is unethical and he knows it, the comment is not... The Michigan courts said that that was improper, right? Yes, and the setup, when she cross-examined the defendant on, can you see up my dress? Because he had testified that when his niece was over once, he noticed she wasn't wearing underpants, she wasn't being taken care of, so he had to take care of her, and that's what he was trying to explain. And she said, well, can you see up my dress? He said, no, I wouldn't look up your dress. That was a setup for, in closing, she said, of course he wouldn't look up my dress, I'm a woman, he only likes little girls. And how can the jury not be affected by those kinds of comments? We know it was improper because that's what the Michigan court said, but the question, of course, becomes whether it's so flagrant that it was all throughout the proceedings and it became an unconstitutional practice. Well, you know, last night I went back through and looked at it on a time basis, in terms of what each day of trial, what the prosecutor did. On the first day of trial, and all of these references are in my Statement of Facts, page 11 through 19, she only did a couple of things. One of them was the defendant's opening argument said a lot of things that most opening statements aren't supposed to say, just right out of the blue. I don't know what that was, an objection or what. I didn't respond to that, but that's what prompted me to get the court to do that. The second day, about nine things. He's unethical. He is not following the rules. He knows how to do that. Counsel is testifying. When I was asked to put on the record the prior question and answers of a witness, and two times accused falsely misstating the evidence. Then the third day, really getting warmed up, I'll skip what she did with the defendant. She said that's improper. Counsel knows that. Counsel knows that is improper. He misstated the evidence. I did not, of course. He can't just outright lie. He can't lie to the jury. He's continuing to lie. And then a defense attorney like this in closing argument. He doesn't like a witness who is telling the truth. This is like the OJ Simpson defense. Objection sustained to that, but the jury hears these things. The prosecutor is the representative of the state. The prosecutor carries a lot of the prosecutor speaks the truth. That they're there to represent the people and to vindicate a victim. And when the prosecutor starts putting the defense attorney in the box of unethical, improper, and a liar, that pretty much negates the defense. Juries stop looking you in the eye. They look the other way. They think that we're not going to take the words of this liar. Do you have Supreme Court precedent? You know, there are very few cases which deal with attacking defense counsel. When I was preparing for argument in this case, I did find United States v. Young, which I put in the 28J letter that I filed with this court, where there were a lot of improper comments that the prosecutor made. And the Supreme Court, and of course in a 2254 we need Supreme Court precedent, said it's not proper for a prosecutor to personally attack a defense counsel. Did they vacate that conviction? No, and you want to know why? I bet you want to tell me. You're more interested than I am, but keep going. That, by the way, was the best answer I've ever heard from an expert witness. But anyway, the reason is, is because they found two things, primarily. One, they found almost all the improper conduct of the prosecutor was clearly invited by improper conduct of defense counsel in his first argument. It came from a state where the defense gets to rebut, gives the last argument. So defense counsel... But isn't EDPA not only just about Supreme Court cases, but about Supreme Court holdings? And by definition, if in that case they didn't vacate the conviction, that that's not a holding. You understand the point I'm making? Well, I think the rule is established in that case to apply, but I don't think there has to be a Supreme Court, United States Supreme Court holding reversing a state court conviction on the misconduct of the prosecutor in personally attacking defense counsel. Every case is distinguishable on its facts. I don't believe the facts have to be exactly the same. In Michigan, I didn't get rebuttal. I'm not making the point the facts have to be the same, but I mean, isn't it important in an EDPA case to come up with a Supreme Court case where the court vacated a criminal conviction on the ground that the uninvited statements about the prosecutor or defense counsel created this unfairness now? What you're saying basically is a petitioner in a habeas corpus case has to show that a similar petitioner has won on that issue? Yeah, yeah, exactly. Not with the exact same comments, but that these kinds of misstatements rise to the level of creating a fundamentally unfair trial. Well, I think they said it would have been a fundamentally unfair trial in that case. Except that the defense attorney got rebuttal to rebut the prosecutor's comments, and they were invited by the defense attorney's comments. Your authority shows the application of the test. Yes. And you're saying that case failed, mine wins. Correct. I see I'm running out of time. I never got a chance to address the Brady claim. I don't know whether the court has any questions about that claim. I do have some rebuttal. I'll be back up for that. Thank you. Thanks. Christiansen-Brown. Good morning. And it's the first time I'm using my new name in front of this court, so I'll try and do it properly. May it please the court, Andrea Christiansen-Brown of the Michigan Attorney General's Office, appearing on behalf of the state. The district court here rejected Mr. Bales' Brady claims, as well as the prosecutorial misconduct claims on the merits, though we do maintain that certain subclaims were procedurally barred in this case. But either way, on the basis of... But you admit the conduct was highly improper, right, by the prosecutor. So a lot of these statements, especially calling defense counsel names by being unethical and things like that, right? If I can premise before I answer your question. This was a very contentious trial. And the Michigan... What kind of a trial? It was contentious. It was combative and aggressive. However... The trial judge should have controlled them, right? I have no idea what the trial court was doing here. However, it was... I will say, though, that when the record's reviewed in its entirety, it's a very balanced trial. There were many objections on both sides, both... And despite my friend on the other side saying that the prosecutor was never admonished, that's not true. During one of the motions for a mistrial, the prosecutor... Excuse me, the trial court said, I'm going to admonish you both. So the prosecutor was admonished, and the court said, don't talk to each other. Talk to me, and we will go from there. But... What is the inclusion in subsequent statements or closing argument saying my opposing counsel is a liar or my opposing counsel is unethical? Isn't that a statement about opposing counsel? Okay, and... And if I can combine Judge Seiler's and Your Honor's questions. The Michigan Court of Appeals found that calling... Actually, it was calling his actions unethical was determined to be improper. So based on United States v. Young, that was cited in my brief, and then again in Mr. Eman's 28-J letter, that has been found to be improper. However, I will not concede that it was prosecutorial misconduct based on the context in which that comment was given. Was it the proper word to use? Probably not. And would many prosecutors not use that word? Probably. So... Or probably not. They wouldn't use the same word. However, I think that the context in which that comment was made, and I would point the court back to the record to see what led up to the comment that defense counsel was acting unethically towards the witness, was after there was an objection by the prosecutor, the trial court sustained the objection, and all of a sudden defense counsel said to the witness, oh, didn't like that, or something to that effect. That's in the record. And the prosecutor objected again, trial court sustained the objection again, and not being able to let that go because he was taunting a witness, said that's unethical. So while it's not the proper word to use, I absolutely agree. But I will not concede that it was misconduct, not under the context in which it was given. There were... So that's with respect to defense counsel. And again, I think that the record is clear how combative this trial was. But the trial court did have an even hand in sustaining objections and overruling objections on both sides. So any claim that it was absolutely one-sided, I would say the record shows that that's not accurate. Going back to the Brady claims, because I know that my friend on the other side has some rebuttal time, so I would like to address that just for a moment. He cites two, three pieces of evidence that he claims were critical and were not disclosed by the prosecutor. Two of them had to do with, I'm just going to use her first name, Andrea. That's odd. Had to do with Andrea's police report to here on township, and also handwritten notes that were apparently written by a therapist. And the third piece of evidence were purported interview notes from another person named Jennifer. In order to prove a Brady violation, which is a very high standard to meet, a... Can we step back from that? Of course. I'm disturbed that there's a police report that's not been provided to the other side. Can you explain how that occurred? Okay. First, what I would say is that in the response that the prosecutor made to the motion for relief from judgment, the prosecutor said, we have a version of this report in the file. It's not the same version that the defense submitted to the trial court. However, the prosecutor said it's in our file. Never did the prosecutor say we didn't turn it over, and never did the prosecutor say we suppressed it. That at no point, it's in the file. I would submit that the prosecutor is saying if it's in our file, it was turned over. Well, did the prosecutor say it was turned over? No. No. You know, this is the semantic game that bothers me. I think if you have a police report, you give a police report. We may not, it may not rise to the level of a Brady violation, but frankly, counselor, I don't get it. that could have risen to the level of a Brady violation and doesn't give it. And I understand Your Honor's position. However, I don't. The nature of the record in this case, the burden is on the petitioner to show that it was not disclosed, and I submit he has not done that. If Your Honor is right, and I can't say that, that it wasn't disclosed. She's admitting to me that you have, or the prosecutor says on the record, I gave it. I mean, you're telling me that that's not on the record either. It's not on the record. The prosecutor for the collateral appeal says it's in our record. And what I deduce from that is that if it's in our file, it was turned over in the initial discovery. And my position on habeas is that the defendant has not shown otherwise. So I understand the... Understand my... I do, I do, and I understand that that is... Yes, and I understand that that's concerning. However, I submit that it was not established here. The Brady violation was... Correct. That's correct, Your Honor. And even... What does the petitioner say about that? Does he claim that he was never shown that or something like that? The counsel for the defense said that... Submitted an affidavit after the trial court denied the motion for relief from judgment and said, you haven't provided me with any affidavits. So the trial court denied the motion. And in a response, or actually it was a motion for reconsideration, defense counsel submitted an affidavit from himself that he had not seen that document. However, the court also pointed out that there was no affidavit from the original trial counsel that he had not received it. So I think that there's a hole there. Okay. We had two counsel at trial? There was a first trial and a second trial. Oh, yeah. Okay. And the original discovery went to the first trial. And based on my review of the record, I haven't seen an affidavit from the original defense counsel. However, I'm sure that my friend on the other side will correct me if I'm wrong. However, suppression and Your Honor's concern duly noted, even if it was suppressed and even if it was favorable for impeachment value purposes only, there was no materiality to this evidence. It had absolutely nothing to do with the claims that were made by Whitney, who was the actual victim in this case. The charges were Mr. Bales committing a crime against Whitney. All of this had to do with Andrea, who was a Michigan 404B witness. Not to say that that's not significant and that it wouldn't affect her credibility. However, they have nothing to do with the underlying convictions in this case. One of these statements has to do with a witness who never testified, right? Which witness was that? The witness that never testified was Jennifer. There were some handwritten notes from Jennifer. But the context of that is that we have no idea who wrote those notes. The prosecutor said, we don't have them. The prosecutor said he didn't have them or she didn't have them at the time. Correct. And we don't even know where those came from. How did they get a hold of them then? I'm sorry? How did the petitioner get a hold of them? No idea. I have absolutely no idea. But the prosecutor said that they did not have them. They are two handwritten pages. We have no idea what they are a part of. They could be a journal entry for all I know. He purports that they are part of a police report. But there's no indication. There's no date. There's nothing to show what exactly they were. And the prosecutor said that they didn't have them. Where did these therapist notes come from? Did the prosecutor have those in her possession at one time? And if you'll forgive my fumbling of this, the prosecutor said, along with the police report, that they had a transcribed version of the handwritten notes. They didn't have the actual handwritten notes. Andrea allegedly gave those to the prosecutor. But they were transcribed into the report that the prosecutor was faxed from the police department. So I'd just like to sum up that even if there was suppression, and that would be concerning if that's what happened here. I submit it was not. But he cannot meet the materiality standard. Yeah. I've said my piece. But I'm happy to answer any more questions if your honors have any. No, I think we're fine.  Thank you. Is it Eman? Is that how it's pronounced? That's correct, your honor. Okay, so you've got your rebuttal. Yes, please. I'll address the Brady claim first. Judge Seiler, in response to your question, there actually were two witnesses who were – one witness who was not disclosed at all, whose identity was not known, and was disclosed in this nine-page police report. And that was the person to whom the similar acts witness supposedly told her story about being molested by my client. She testified at trial, I told my neighbor about this when it happened. The neighbor was then interviewed by the police, according to the police report, and said, I don't know what she's talking about. She never told me. Had the identity of that witness been disclosed, had we had that report, there would have been a subpoena out to that witness to testify. How would that witness have helped your client? I don't understand. That witness would have helped my client by showing that the similar acts witness was a liar, that she made this up, and that she was trying to buttress her own testimony by saying I told somebody else. I thought you said she didn't testify. You're talking about the neighbor that didn't testify. The neighbor did not testify, correct. The other witness, we'll call her Jennifer, the wife testified about her saying to the wife that something terrible had been done by my client to her. She just found out about it, and that prompted her to meet with the niece for hours and try to find out if anything proper had happened there. However, the report shows that what happened, allegedly, between the daughter-in-law, it was, excuse me, and my client, happened in 1989, and that when, according to the daughter-in-law, when she told her mother-in-law that she was troubled by phone calls from my client, not molestation, not improper or illegal contact, the mother-in-law said, oh, it's your fault. It's not a problem. And that's a completely different version than what the wife had testified. But under that version, supposedly, your client was told back at that time about the complaint, correct? Yes. So he knew? Well, he didn't know what it was. He didn't know what it was. I don't think the notes say that he was ever contacted about it. I could be wrong, but I don't think so. How did we find that out? The question was asked. There's an affidavit of Jane... Red light's on, so if you want to conclude this point... Affidavit of Jane Duvall that was filed in the trial court about that she's the one who obtained this. She also indicated in an affidavit that she reviewed the initial discovery from the first lawyer. She got the packet and that this police report was not in it. Thank you. Thank you, Mr. Ehman. Thank you, Ms. Christensen-Brown, to both of your arguments and briefs. We appreciate them. And the case will be submitted.